May it please the Court, Jeffrey Dickerson from Reno, Nevada, representing the Appellant and the Plaintiff in the below matter, Hansen v. Malloy. The District Court determined in this First Amendment case on the first element that there was, as a matter of law, considering the evidence most favorably to Mr. Hansen, Trooper Hansen, that there was no speech on a matter of public concern. We appeal that because we think that that is in error, because part of his grievance, no doubt his grievance was a personnel matter that pertained to him, but it also contained elements of public concern. His grievance on the December 2007 evaluation specifically referred to, and I'm looking at ER441, proposed solutions ensure that the evaluation process strictly adheres to the requirements of standing orders, Nevada revised statutes, Nevada administrative code with respect to work performance standards, period. Change the current work performance standards to accurately reflect the duties the troopers in the Nevada Highway Patrol are assigned and expected to do. So he's talking not just about himself, but about troopers in the Nevada Highway Patrol and how they're evaluated. Had he brought some kind of class action? I mean, it seems to me it's entirely about himself. This is a grievance that relates to his particular situation, and to say that it relates to some broader policy makes it impossible to distinguish any public employee case, doesn't it? Because anybody who's a public employee and complains about a policy is complaining about a governmental policy. It's conceivable. The public concern analysis, however, you need to look at this particular factual scenario, I would submit to Your Honor. What about these facts suggest that it's anything other than his personal personnel situation? The fact that he refers to others, not just himself, the fact that he's talking about. But he's not complaining on behalf of any others. He's purely concerned about how it affects him, as best I can tell. Well, if his grievance, we would submit, if his grievance is granted, if it had gone up to the EMC, which it went in October of 2008, and they had agreed with him, that ruling could have affected how all troopers are evaluated because it would have required them to be, first of all, the work performance standards of all troopers, to contain the specific objective criteria by which they're going to be evaluated as opposed to being evaluated against each other. And that would have benefited all of the troopers. So, and it's not in terms of context, which is another question, part of the public concern analysis, besides the important concern of content of the speech, is the context. Mr. Garcetti was complaining about how the city attorney was not putting in facts sufficient for his search warrant. And he was complaining about how that was the policy of the city attorney, not only for himself but for all the other city attorneys. That was a personnel matter. Well, my recollection of the Garcetti case is that it turned on the question of whether or not that was part of the district attorney's job duties to complain to the district attorney that the cops weren't doing their affidavits properly. But the cops weren't, and not just as to him, but as to everybody else. True. But I don't regret it. Forgive me, Your Honor, if I'm misrecollecting the holding in Garcetti. My recollection is it turned on the job duty issue, whether it's speech by a citizen or speech by an employee. I think you're right. Yeah. But in that case, had they not turned it on that issue, I don't know how the court would have ruled on the public concern issue. I don't think the decision turned on that issue, if I'm recalling correctly. Now, is there anywhere in the grievance that the public concern possibility of the highway department instituting a quota policy, 70 percent of a citation or 70 percent of a stop should result in citations, and this is bad for the public and for the people who drive commercial trucks? Is that claim made anywhere in the grievances? Our argument on that, Your Honor, is we put a footnote. No, no, no, no, no, no. Not your argument. Oh. Cite a grievance where that is made out the evidence. That's what I'm interested in. It's not in there. Okay. It's our argument, if I may, is that it's implied and that questions could arise in that regard out of this grievance. The EMC, for instance, the Employee Management Committee that ultimately considered this grievance outside of the Nevada Highway Patrol and outside of the context. This grievance was not directed solely internally. It was directed eventually and ultimately to an outside agency independent of this department. So I think in context, adding to my argument before with respect to the public concern element, that it's comfortable. It's a comfortable set of facts from which to conclude that an aspect of this grievance is on a matter of public concern. And there's a reasonable inference moving down the analysis away from the public concern, job duties, to the causation analysis, the subsequent events, the subsequent sequelae of events by Malloy demonstrate that he had an animus against this idea. And, in fact, in the December grievance, the grievance of the 2008 evaluation, he specifically states in his grievance, and I would submit this is a matter of public concern, he states in his grievance that ER 485, I feel this reprimand, as well as the evaluation I received, was done in retaliation for me filing a grievance last year. And he goes on to explain why. And that's at ER 485. And in this court, a merits panel of this court in the Alpha Energy Savers v. Hansen case addressed the question of whether a one-time complaint of discrimination by a public employee could be a matter of public concern. And in Hansen, a merits panel of this court held that it could be a single event. And here we have somebody complaining about retaliation for having engaged in what he believed was protected activity. And that is speech on a matter of public concern. If I'm correct about that, and incorrect about the prior adverse employment actions, the this would include the adverse actions moving forward of the written reprimand and the suspension. Which grievance was it? The district court quoted from one to the effect of I don't object to using a measuring stick, but I want to know what the measuring stick is or something like that. Is that the same grievance? That's the December 2008 grievance, the grievance of the second evaluation. So based on that, Your Honors, we would submit the case and ask that the district court be reversed, the case remanded for trial, and the merits consistent with this Court's opinion. Thank you. I'd reserve the remainder of my time. It happens. May it please the Court, my name is Michael Jensen. I represent Mark Malloy, the appellee in this action. The district court in this case properly found that the speech in this case was not on a matter of public concern, but was instead a matter of private interest dealing specifically with Mr. Hansen's employment situation and treatment as opposed to something that would be a broader societal concern or something else that would be newsworthy or of interest to the public. As the Court said in the Garcetti case, underlying our cases is the premise that while the First Amendment invests private employees with certain rights, it does not empower them to constitutionalize the employee grievance. We would submit in this case that's exactly what Mr. Hansen is attempting to do. He's trying to constitutionalize his employee grievances. The undisputed facts in this case show that the speech that he's relying on to be on a matter of public concern is found primarily in three grievances, a grievance of his 2007 performance evaluation, a grievance of his 2008 performance evaluation, and a grievance of a written reprimand that he received at the same time as his 2008 performance evaluation. Looking at the contents of each of those grievances, I would submit that you would have to look in vain for any discussion within any of those grievances that deals with issues of public concern. Instead, it's very clear in those grievances that Mr. Hansen is talking about his own private treatment, his own private situation. Specifically, what he said in deposition that he was complaining about was the fact that he believed the Nevada Highway Patrol was required as part of his written work performance standards to have a line in there that indicated that he would be compared to his peers as part of the evaluation process. That's the alleged misconduct in this case that Mr. Hansen is relying on as being on a matter of public concern, that there's this technical requirement that in order to properly evaluate him, you had to have language in his work performance standard that said that he would be compared to his peers. I would submit that under the cases even cited in Mr. Hansen's brief, that that is not the kind of misconduct or alleged illegality that rises to being a matter of public concern. And importantly as well is the fact that it deals with his job performance and treatment as opposed to someone else's. He's not arguing that someone else was discriminated against or that there was some kind of a good old boy network out there through which women or minorities were discriminated against. He's arguing only about and complaining only about his own job treatments. What about Mr. Dickerson's point that if he were the win, this would affect other troopers as well as himself? Your Honor, I believe that that still would not rise to a level of matter of public concern. Let me bring out two points. The first point is the fact that he went to the Employee Management Committee, in my opinion, is not the kind of form that would be taking something to the public. That is just another step in the internal grievance process. He just took it to the last step in the grievance process. And within looking, I believe the proper analysis in this case is to look at what he actually said, rather than what could have potentially happened at some point in the future with some effect or result that we don't even know what that is. If they had found that there was some issue with the evaluation process here, what effect would that have had on any member of the public or other troopers in terms of how they do their job, in terms of the efficiency of the operation of that agency, in terms of any kind of alleged unwarranted enforcement activity? The speech itself does not raise any issue about anyone else in the public eye. Other than Trooper Hanson. Trooper Hanson, in this case, was advocating on behalf of the interests of Trooper Hanson. And I think that's the bottom line. This was about his interests and how he was doing, not how other troopers in his unit were doing. Additionally, with regard to content, I think that when you look at what he was actually complaining about, when you talk about that issue of quotas, number one, there is no language in his grievance that brings up the issue of quotas. And what he was arguing about wasn't, in my opinion, a quota at all. In fact, what he was arguing about was that as part of his evaluation, the troopers in that geographical area that he works in, the statistics and activity of those troopers were going to be compared to his activity. I would suspect that most folks who are in the workplace would not be too surprised that an employee's job performance is in some ways looked at in terms of what other folks are doing in the same type of a job, in the same geographical area. So I would submit that that idea that just by raising that issue of quotas, if he had, that that would somehow be a matter of public concern. In this case, he didn't raise that. But even if you could try to call what was happening here a quote, I would submit that that would not be a matter of public concern, because that's, in my opinion, the way people get evaluated on their job. Most people get evaluated. You look at how other people are doing the job. And the reason that Mr. Hansen was... I mean, it's been a few years since I've seen it, but I recall seeing newspaper stories decrying the fact that highway patrolmen had ticket quotas. And that was enough of public concern to cause the newspapers to print those stories. Isn't that what we're talking about here? It's not. There wasn't a ticket quota in this particular case. They talked about having a certain level of citations that he should strive for. The thing that they're focused on... Sounds to me like a ticket quota. How is it different from a ticket quota? Your Honor, I don't believe that that's a ticket quota. See, my premise isn't that a ticket quota is necessarily bad, but it's something that becomes the subject of public discussion. And newspapers have printed stories about highway patrolmen having quotas for citations they're supposed to issue. And I don't know that this is particularly different. Again, I'm not saying the policy is a bad one, but I'm not sure that it's not a subject of public interest. I would say that I believe with regard to the issue of quotas, what I haven't found in any case is that there is any kind of a per se rule that says if you use the word quota in your speech, that it somehow becomes a matter of public concern. I think it's more akin to the case that I cited in my brief, the Brownfield case, where they stated that simple references to government functioning without something else. If you don't like the word quota, how about you must strive to maintain a citation ratio of at least 70% as related to actual stops. Do you like that bureaucratic gloss rather than quota? I appreciate what you're saying, Your Honor. Certainly what he was being told was that you're performing at an extremely low level. There's no dispute about that, that he was at a level that was between, in his traffic enforcement, a level between 50 and 80% below that of his peers. And in those circumstances, his supervisors were saying to him, as part of your development program, we're going to ask you to have a certain level that gets you closer to what your peers are doing. This is a program of developing this particular individual who was a low performer and helping him come up to a level that was more in line with the averages of his peers in the same geographical area. So that's the context of that statement, is that it's part of his performance plan to try to get a very low-performing employee to come up. But your point is he didn't complain about that. Pardon? That's not the speech that he's complaining about, that he was retaliated for. He didn't take on the citation ratio or the quota. He took on other aspects that affected him. Well, absolutely, Your Honor. I believe if you look at the content of his speech, it's very clear that he's not bringing this forward as an issue of concern in the sense that he's not saying, well, because I had this development plan that required me to do certain things so I could get my performance up to a certain level, that that had any impact on the public or other employees. And I think that's a critical point in this case, is that he's not complaining about any negative impact that this is having on others in the public. As the district court found, his speech doesn't contain anything indicating that there would be a deleterious effect on himself or the public as a result of this action. I would submit, finally, that the speech in this particular case, looking at it, provides really no information that would be helpful to the public in evaluating the function of the Nevada Highway Patrol. It provides nothing that would help the public understand whether or not the operation of the Highway Patrol was appropriate or not. I see that my time has elapsed. Can I finish my comment, Your Honor? As the Court stated in the Connick case, when a public employee speaks not as a citizen on matters of public concern, but instead as an employee on matters of only personal interest, absent the most unusual circumstances, the Federal Court is not the appropriate forum to review the wisdom of personnel decisions taken by a public agency. We would submit that that's what's happening in this case. We're trying to deal with a particular employee who is having substantially low or was having substantially low enforcement activity at this time, and we would respectfully request that you affirm the decision of the district court. Thank you. Thank you. Rebuttal. I'd refer the Court to ER Excerpt for Record 439. That's the first page of his first grievance, and that particular page specifically refers to his conversations that he had moving up to the point where he filed a grievance, the review of his evaluation, and the prior discussions that he'd had with those in his chain of command with respect to being compared to his peers in terms of level of performance as opposed to compared to a work performance standard. I don't understand. That's a too subtle a difference to me, what you just said. What's the difference between the two? The Nevada review. No, no, there's two things. There's two of the difference. If you have work performance standards that are in writing, it's set down the objective criteria that you're supposed to be measuring, the measuring stick that Judge Clifton referred to. Then you have something that's legal and can stand up to a test of whether or not the evaluation process is fair. If it's comparing you to peers over here, you're not doing what the personnel statute say you have to do, which is look at his work performance standards, not his peers. Well, of course, the same evaluation did compare him to a standard. It talked about minimum requirement of six level inspections per month, so on and so forth. We're not talking about a model employee here. He fell short on other measures as well. Well, I think that numerical indication that you just gave is not in his work performance standards. That's based upon the division goal that's outside of his work performance standards. His argument was, look, you've got to comply with what the Nevada legislature has said. If we're going to evaluate employees, they have to know what they're expected to do, and they have to be evaluated against that measuring stick. And in order to have that measuring stick make any sense at all for the employee and for the employer, you've got to put it into writing. And that wasn't done here. And that's a matter of public concern because it affects how the employees are evaluated and, in turn, whether or not they're being evaluated in a correct way. And citizens would want to know that because these are law enforcement officers out there. They're on the road, and the public is entitled to know that they're being evaluated properly. How are citizens interested in the difference between a numerical evaluation or an evaluation based on a numerical scale and an evaluation based on a comparison against coworkers? How is that a subject of public concern? Well, if it raises a question of quotas, and perhaps there's an inference that that's why they don't want to put it in writing because it raises a question of measuring. He's not asking not to have quotas. I mean, he's acknowledged he'll accept a measuring stick. His beef isn't against the quota. He's saying you ought to have this constant measuring stick. Don't measure me against the coworkers that might be super productive. I don't understand how that's a matter of public concern. Well, that's his intent, okay? But the question is, could the public see ñ could a question arise out of his grievance that would interest the public? And that goes to the quota issue. Thank you, Your Honor. We thank you. We thank both counsel for your arguments. The case just argued is submitted.
judges: Korman, Clifton, Bea